IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JEANELLIE NATAL-OLIVO,**<br><br>PLAINTIFF<br><br>v.<br><br>**THE BOSS COLLECTION SERVICE, INC.,** *et al.*,<br><br>CO-DEFENDANTS | **CIVIL NO. 13-01232 (JAF)**<br><br>**RE:**<br><br>**Fair Debt Collection Practices Act.** |

*Opposition to "Motion to Dismiss Second Amended Complaint"*

**TO THE HONORABLE COURT:**

   **COMES NOW** plaintiff, JEANELLIE NATAL-OLIVO (hereinafter referred to as "Natal-Olivo" or "Plaintiff"), through the undersigned counsels, and respectfully states and prays as follows:

I. INTRODUCTION

   On September 23, 2013, Plaintiff filed a *Memorandum in Opposition to Motion to Dismiss*. [**See Docket 34**] In said memorandum, Plaintiff argued that Defendant The Boss Collection Service, Inc. ("Boss" or "Collection Agency"), and other previous co-defendants, were misleading the Court by formulating arguments that would render the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.*, virtually powerless for debtors who are victims of deceiving, abusive, threatening and other illegal collection efforts performed by collection agencies. The facts, applicable law and arguments set forth therein are hereby incorporated by reference, since the arguments in the *Motion to Dismiss* filed by Boss are, to an extent, the same arguments previously raised by Boss and previous co-defendants.

   As previously stated, it is hornbook law that consumer protections statutes, such as the FDCPA, shall be interpreted in the light most favorable to the injured consumer. Cirkot v. Diversified Financial Systems, Inc., 839 F.Supp. 941, 944 (D. Conn. 1993). However, Boss and other co-defendants, collectively

referred to as "Co-Defendants", have again moved for dismissal of the instant case with arguments that ask this Honorable Court to ignore this basic principle of legal interpretation. [**See Docket 48**].

In a nutshell, the Collection Agency bases its arguments in a false construction of applicable facts, stating that Plaintiff was not a consumer but an "independent contractor" of Gatsby, a company that sells clothes to consumers all across the Island. The Collection Agency relies exclusively on the contents of an agreement made to sign by Plaintiff that states that the debt that gives rise to the present case is a "commercial debt". However ignoring that, for the purposes of the FDCPA, the classification of a debt will be determined by the use made of the debt by the recipient, in this case, by the use given to the debt by Natal-Olivo. In essence, Boss contention is that collection of Gatsby debt will <u>never</u> be subject to a violation of the FDCPA.

Now, months and several motions later, the Collection Agency finally states that they "carefully reviewed" and "implemented and maintained procedures reasonably adapted to avoid errors as to the collections of any consumer debt." These statements are irrelevant to this case, given that the purported "careful" review of the debt and the "procedures" newly implemented are limited exclusively to the contents of an agreement, which, as we have stated, ignore the FDCPA and interpretative case law.

## II.   Relevant Substantive and Procedural Facts

On November 4, 2013, Boss filed a *Motion to Dismiss* under Rule 12(b)(6) alleging, in part, that Natal-Olivo failed to state a claim upon which relief could be granted because the debt incurred by Natal-Olivo was a "commercial debt" and that precluded her from obtaining <u>any</u> kind of relief. [**See Docket 48**] Boss bases this contention on an "Agreement for the Purchase of Merchandise on Credit" ("Credit Agreement"). [See **Docket no. 48-1**] This Credit Agreement is a requirement drafted and established by Gatsby as a pre-requisite for obtaining credit to purchase clothes. Gatsby's Credit Agreement states that the credit

granted is for commercial use. Based exclusively on the content of this Credit Agreement, Boss argues that Natal-Olivo is precluded from relief under the FDCPA because of the content of this Credit Agreement. As such, according to Gatsby, all Gatsby debt, a walk-in retail store, is precluded and shielded from any liability under the FDCPA. Similarly, Boss argues that if Natal-Olivo alleges that the real intent and use given to the debt was not for commercial use (as Gatsby puts forth in their Credit Agreement), then Natal-Olivo is estopped from obtaining the relief sought.

Boss is impermissibly setting forth a Catch-22 defense: either the consumer admits that the credit was for commercial use, which may avoid application of the FDCPA, or the consumer is precluded from relief because he or she made such representation when he or she signed Gatsby's Credit Agreement, a requirement for obtaining credit in the first place. As we illustrate, this semantic circling of the FDCPA is a mere subterfuge to avoid liability under the FDCPA, a consumer protection law that must be afforded to Natal-Olivo.

Additionally, the Collection Agency argues that since the Credit Agreement states that the debt as for commercial use they are covered by the *bona fide* error defense, thus exempted from liability. This second argument, again, relies exclusively in the contents of Gatsby's Credit Agreement. However, Boss argues for the first time that it has "implement[ed] and maintained procedures reasonably adapted to avoid errors as to the collections of any consumer debt".

This recent assertion misses the mark because it is also exclusively based in the contents of Gatsby's Credit Agreement. The "procedures" allegedly implemented, as Boss admits, is the reliance in the content of the Credit Agreement. They have not alleged that its collectors are trained to detect consumer debt from commercial debt, or that they inquire as to the nature of the debt being collected. These reasonable procedures were not conducted then and are not being conducted by Boss, who instead threatened Natal-Olivo with the filing of criminal charges if she did not pay her debt with Gatsby.

However, Boss' grounds for dismissal must fail as they only rely on the contents of the Credit Agreement, and the standard of review for determining whether a debt is a consumer debt for the purposes of the FDCPA has little or nothing to do with the form or content of an agreement for credit. On the contrary, the classification of a debt as a consumer debt will depend upon the use given to the debt <u>by the recipient</u>, in this case, by the use given to the debt by Natal-Olivo.

As alleged in the *Second Amended Complaint* (**See Docket 46**), Natal Olivo does not, now or ever in the past, own or operate a business or commerce of any kind. Natal-Olivo intended to purchase Gatsby clothes solely for herself and her household. Never did Natal-Olivo purchase Gatsby clothes on credit for a business, commercial or re-sale purpose. More so, Natal-Olivo made verbally clear to Gatsby employees that she intended to use the debt to purchase Gatsby clothes solely for herself and her household. To which Gatsby employees replied that the Credit Agreement was routine; a standard but necessary and unavoidable step in the process of obtaining credit from Gatsby. After Natal-Olivo incurred in difficulties to meet her payments, she entered into default. Gatsby made efforts to collect the debt but these were unsuccessful. Gatsby then referred the debt to the Collection Agency, who failed to take any precautions to determine whether the debt was used for personal and household use or for commercial purposes. She was never asked whether she had sold the Gatsby clothes purchased with credit. They conveniently and exclusively relied in the contents of a self-serving Credit Agreement. As a result, the Collection Agency harassed, made false representations and injured Natal-Olivo in their efforts to collect a consumer debt, as proscribed explicitly by the FDCPA.

### III. LEGAL ARGUMENTS

**A. *Natal-Olivo's debt is a "consumer debt" under the FDCPA***

The FDCPA defines a consumer debt as: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the

money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). "Under this definition, the use of the proceeds by the borrower is paramount. The motive or intent of the lender is irrelevant." Bloom v. I.C. System, Inc., 753 F.Supp 314, 317 (D.Or.1990) *aff'd*, 972 F.2d 1067 (9th.Cir. 1992) (*stating* that "Neither the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry.").

As such, determining whether an obligation is a consumer or business debt for FDCPA purposes requires an examination of the transaction as a whole and the nature of the transaction from which the debt arose. *See* In re Howe, 446 B.R. 170, 173-74 (Bankr. E.D. Pa. 2009) *citing* Slenk v. Transworld Sys., Inc., 236 F.3d 1072, 1075 (9th Cir. 2001). Similarly, "[p]laintiff may well have violated the terms of the corporate credit card agreement by incurring personal debt with it, but that fact, even if true, cannot change the character of the debt and take it out of the FDCPA's jurisdiction." In re Howe, 446 B.R. at 174 *citing* Perk v. Worden, 475 F.Supp.2d 565, 569 (E.D.Va.2007).

As it stems from the *Second Amended Complaint*, Natal-Olivo intended and used the debt exclusively for personal and household purposes. Natal-Olivo never operated or owned a business of any kind, including the business of re-sale of Gatsby clothes under consignment. This is the use that this Honorable Court must look into when determining the nature of the debt and its classification for the purposes of the FDCPA. This shatters the Collection Agency's arguments that fail to address the use by Natal-Olivo and blindly ground their dismissal exclusively in the contents of the Credit Agreement and conveniently ignoring the manner in which this debt was memorialized and its true use for the purposes of the FDCPA.

There is no question that the standard contract signed by Natal-Olivo at Section 3, states that Natal-Olivo's debt was for commercial use. However, for the purposes of the FDCPA, this debt was in fact a consumer debt and not a

commercial debt because the use intended and given to the debt was for personal and household purposes and not for a commercial use.

This fact is not only alleged by Natal-Olivo in the *Second Amended Complaint*, whose well-pleaded allegations must be taken as true and all inferences must be made in her favor, Wash. Legal Found. v. Mass. Bar Found.*,* 993 F.2d 962, 971 (1st.Cir.1993), but it can also be inferred when looking at the transaction as a whole. In re Howe, 446 B.R. at 173-74.

First, the Credit Agreement made to sign by Gatsby is a standard, non-negotiable contract of adhesion. These contracts are generally valid, but disputes as to the contents and intention of the parties must be liberally construed to favor the adhering party and strictly against the drafting party. Rosenberg v. Merril Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 19 (1st.Cir. 1999). There is a dispute between the parties to this action as to whether the debt arising out of the transaction memorialized in the Credit Agreement is a consumer debt or a commercial debt for the purposes of the FDCPA. As such, an according to applicable law, doubts as to the nature of the debt memorialized in the Credit Agreement, for the purposes of the FDCPA, must be construed liberally in favor of Natal-Olivo, the adhering party, who signed the Credit Agreement as a "take-it-or-leave-it" condition placed by Gatsby in order for it to extend her any type of credit.

Secondly, notwithstanding the content of the Credit Agreement, the purpose and intent for Natal-Olivo's credit was never of a commercial nature. Natal-Olivo never intended to purchase clothes for re-sale. Natal-Olivo never sold Gatsby clothes to third parties. The use and intention for the debt in controversy was always for personal and household purposes. This is the proper inquiry to determine the nature of a debt under the FDCPA. The contents of the Credit Agreement is irrelevant in determining that the debt at hand is either a consumer or a commercial debt. Bloom, 972 F.2d at 1068.

Finally, the Collection Agency failed to proffer any evidence whatsoever to refute the intention and use given to the debt by Natal-Olivo and only relies in the contents of the Credit Agreement, which, as we have stated, is irrelevant when determining the nature of the debt for the FDCPA purposes.

In this case, Natal-Olivo alleged enough well pleaded facts that taken as true and making all inferences in their favor, nothing but a consumer debt clearly arises. Co-Defendants are asking this Honorable Court to stray away from a clear standard of review applicable to the particular defense raised in the instant case. They request this Honorable Court to rely exclusively in the contents of the Credit Agreement, a contract of adhesion, in abstraction to the use given to the debt by Natal-Olivo and the events surrounding the debt that gives rise to the instant causes of action. The Collection Agency requests this Honorable Court to ignore that Natal-Olivo pleaded enough well-pleaded facts that taken as true and drawing all inferences in their favor will necessarily result in a determination that Natal-Olivo never intended or used the debt to purchase clothes for commercial or re-sale purpose. Finally, Boss request this Honorable Court to make such a determination without proffering evidence of any kind as to the use given to the debt by Natal-Olivo.

In the end, it is clear that the debt that gives rise to the instant causes of action is a consumer debt for the purposes of the FDCPA. Natal-Olivo never used nor intended to use the debt for commercial purposes. She always intended, expressed her intention and used the debt for personal and family purposes. As such, Natal-Olivo is entitled to the protections of the FDCPA. If the Collection Agency infringes these protections, as it happened in the instant case and as it was properly alleged in the *Second Amended Complaint*, then Natal-Olivo is entitled to seek relief under the FDCPA. Therefore, Natal-Olivo respectfully requests that this Honorable Court make a determination that, at this dismissal stage, the debt incurred by her was in fact a consumer debt for the purposes of the protections under the FDCPA.

### B. Collection Agency failed to argue all of the elements of the bona fide error defense and, in any case, said defense is wholly inapplicable

In their *Second Motion to Dismiss*, the Collection Agency raised the defense of *bona fide* error. They stated that they do not posses an independent duty to investigate the information provided to them by creditors and as long as they rely in good faith in such information provided to them, they are shielded from the prohibitions proscribed by the FDCPA.

The Collection Agency argument comes up short because it fails to prove or proffer any evidence whatsoever regarding all of the three (3) elements of the *bona fide* error defense. Notwithstanding, the Collection Agency unreasonably relied on creditor's representations and, moreover, the Collection Agency has a duty to implement reasonable policies and procedures to avoid making false deceptive or misleading representations in connection with collection of a debt. Lastly, the case law in which the Collection Agency relies in clearly distinguishable and inapplicable to the case at hand.

In the first place, the *bona fide* error defense requires that a defendant meets, *by preponderance of the evidence*, a three-part test to show that its FDCPA violation: (1) was not intentional; (2) it was a *bona fide* error; and (3) it occurred despite maintenance of procedures reasonably adapted to avoid any such error. Jenkins v. Heintz, 124 F.3d 824, 828 (7th.Cir. 1997) *cert. denied* Jenkins v. Heintz, 523 U.S. 1022 (1998). The Collection Agency argues that they relied on the information provided to them by Gatsby and that the contents of this Credit Agreement was all the reasonable procedures necessary to collect a debt in conformity with the FDCPA. However, the Collection Agency failed to proffer any evidence whatsoever regarding the unintentional nature of the infringing acts or that the violations were the product of a *bona fide* error, as they never inquired whether the debt was truly commercial in nature. Boss has not proffered any evidence that would outweigh the presumption of Natal-Olivo's allegation at this stage of the litigation. We must reiterate that under the

Rule 12(b)(6), a district court must accept as true all well-pleaded allegations and make all reasonable inferences in their favor. When taking Natal-Olivo's allegations regarding solely, for argumentation purposes, the two elements not alleged by the Collection Agency in their *Motion to Dismiss*, it is clear that at this stage of the litigation such a defense is far from established.

Notwithstanding, the Collection Agency also unreasonably relied in the information provided to them by Gatsby and their reliance in such information is not enough to meet any of the three elements of the *bona fide* error defense. To establish this affirmative defense, the Collection Agency must demonstrate that it maintains policies and procedures designed to avoid making false deceptive or misleading representations in connection with the collection of a debt. Arteaga v. Asset Acceptance, LLC, 733 F.Supp.2d 1218, 1231-32 (E.D.Ca. 2010).

In the present case, the Collection Agency fails again in this regard. Its only defense and evidence is that the Credit Agreement stated that the debt was for commercial use. Nothing more.  The Collection Agency failed to argue or proffer any evidence regarding the procedures and steps they took to avoid making false deceptive and misleading statements, as required by the statute. They rely solely in the contents of the Credit Agreement, which, as we have established, is not determinant as to the nature of the debt being collected. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573 (2010). In Jerman, the Supreme Court concluded that: "[o]ur law is therefore no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law." Id. at 582-83. The Supreme Court in addressing this argument and the requirements of "reasonable procedures" discussed immediately above, the Court further adds:

> We draw additional support for the conclusion that bona fide errors in § 1692k(c) do not include mistaken interpretations of the FDCPA, from the requirement that a debt collector maintain "procedures reasonably adapted to avoid any such error." The dictionary defines "procedure" as "a series of steps followed in a

>regular orderly definite way." [Citation omitted]. In that light, the statutory phrase is more naturally read to apply to processes that have mechanical or other such "regular orderly" steps to avoid mistakes—for instance, the kind of internal controls a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of day, § 1692c(a)(1), or make false representations as to the amount of a debt, § 1692e(2).

Id. at 587.

As such, *the Supreme Court established that mistakes in the interpretation of the FDCPA do not act as a defense against the application of the statute to an infringing collector*. *See id*. Therefore, an incorrect interpretation of the reasonable steps required meeting the threshold of the *bona fide* error defense and a misinterpretation of the FDCPA in light of the contents of the Credit Agreement is not enough to provide a collector with the protections provided under Section 1692k(c).

Finally, all the cases in which the Collection Agency relies are either inapplicable or distinguishable to the instant case. Firstly, the cited case Poulin v. The Thomas Agency, 760 F.Supp 2d 151 (D.Me 2011), is out of context because the duty to investigate being discussed in the opinion is about the validity and legality of the debt, and not the nature of the debtor. In Poulin, the matter adjudicated was the procedures a collector needed to implement in order to assess the *identity* of the debtor and the *validity* or amount of the debt, not the nature of the debt. In Poulin, the Maine District Court determined that "verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid". Id. *citing* Chaundry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999). In this case, the identity and validity of the debt is not in controversy. What remains in controversy is the *nature* of the debt and the Collection Agency failed to proffer any evidence or make any allegations as to any procedures undertaken by them to avoid infringing the FDCPA by conducting oppressive and offensive collection behavior.

Also, Shapiro v. Haenn, 222 F.Supp.2d 29 (2002), is clearly distinguishable because the debt was made by a commercial bank to develop commercial real estate. Shapiro relates to a $40,000.00 commercial real estate loan made out to the plaintiff in a banking institution and in which the plaintiff signed a total of five (5) subsequent authorizations stating the commercial nature of the loan. Shapiro, 222 F.Supp.2d at 35-36. Additionally, in Shapiro, the collector was a solo practitioner who personally reviewed all documentation referred to him in order to determine the nature of the loans given to him for collection. Id. at 44.

In this case, however, the debt was taken at a Gatsby retail location for an amount totaling $300.00. The only agreement ever signed by Natal-Olivo was the Credit Agreement and no further inquiry was ever made by Boss as to the use given to the debt by Natal-Olivo. As can be ascertained, the facts of this case are clearly distinguishable from the facts in Shapiro, moreover when taking into consideration that the well-pleaded facts included in the *Second Amended Complaint* ought to be taken as true and in favor of Natal-Olivo.

As to the Smith, Sanchez, and Clark cases, firstly, the Smith case again regards the collector duty to independently investigate the *validity* and *veracity* of the amount referred for collection. Smith v. Transworld, 953 F.2d 1025 (6th. Cir. 1992). In said case, all parties agreed that the mistake was on the creditors part for referring for collection a debt for the wrong amount and, as such, the error taken place was a mere clerical error. Additionally, Sanchez and Clark also involve cases in which the violation is for the reliance on information regarding the *amount* to be collected, not its *nature*. Sanchez v. United Collection Bureau, Inc., 649 F. Supp.2d 1374, 1380 (N.D.Ga. 2009); Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162 (6th.Cir. 2006).

Here, contrary to acting in good faith and unintentionally, the Collection Agency acted in bad faith, intentionally and with the purpose of harassing, abusing and oppressing Natal-Olivo. Let us reiterate that the Supreme Court in

Jerman established that the *bona fide* error is available to clerical mistakes and not to mistakes of law, as intended by the Collection Agency when it asks this Court to excuse their neglect to take proper measures to avoid harassment and oppression of a protected consumer. In the end, deceptive and misleading statements, as well and harassing, abusing and oppressing statements made during the collection communications stand far from being a clerical error protected by the *bona fide* error defense.

**C. Equitable defenses of one's own acts and estoppel are also inapplicable.**

Boss also argued in their *Motion to Dismiss* that Natal-Olivo is estopped because her actions of portraying that the debt was for a commercial use when the real purpose was for personal use. This again is clearly inapplicable. The events leading up, during and subsequent to the award of Gatsby's credit is clearly relevant to the issue at hand: whether the debt is a consumer debt or a commercial debt. Allowing Boss to argue that if Natal-Olivo was in fact obtaining credit for personal purposes, she is precluded from seeking relief would render the FDCPA wholly inapplicable and *de facto* powerless. Such an interpretation is a mere circling of the protections under the FDCPA and its interpretative case law to avoid liability.

In this regard, the Collection Agency relies in a District Court case that discussed the doctrine of one's own acts in the context of a claim under Puerto Rico state law, specifically, under Article 7 of the Puerto Rico Civil Code, where a plaintiff requested relief under said statute. Because in this case, the only relief being requested is that provided by the FDCPA against collection agencies that conduct abusive and oppressive collection practices and behavior, the discussion of the normative set out in CMI Capital Mkt. Inv., LLC v. Municipality of Bayamon, 410 F.Supp.2d 61, 76-77 (D.P.R. 2006), is wholly inapplicable to the case at hand. We must add, however, that Article 7 of the Puerto Rico Civil Code provides for equitable relief *when there is no other applicable statute*. 31 P.R. Laws. Ann. § 7 (2010). In fact, CMI Capital, 410

F.Supp.2d at 76, stated that "appearing that there is vast statutory authority applicable to the controversy at hand there is no need to decide the same on equity grounds."

Similarly, the Collection Agency cites another inapplicable case decided by the Eastern District Court for the State of Virginia. Smith v. EVB, 2010 WL 1253986 (Mar. 23, 2010) *vacated and remanded by* Smith v. EVB, 438 F.App. 176 (4th.Cir. 2011). Boss tries to equate Natal-Olivo's debt with Gatsby with the debt incurred in Smith, a loan, taken out by a construction corporation in a commercial banking institution for an amount of $210,000.00 with a personal guaranty made out by the plaintiff and with several contemporaneous authorizations for disbursements that stated the business purpose. The debt in Smith, as was the case with Shapiro, is obviously distinguishable from Natal-Olivo's debt. The debt here was taken out by an individual, versus a corporation, in a maximum amount of $300.00, not $210,000.00, without subsequent documentation, collateral or personal guarantees.

**D. Natal Olivo validly alleged in the *Second Amended Complaint* that the debt at hand was a consumer debt for the purposes of the FDCPA**

The Collection Agency very briefly argued that Natal Olivo carries the burden of establishing that the debt is a consumer debt. [**See Docket 48, P.10**] In their support, the Collection Agency cites an unreported case of the District Court of Maryland, which concluded, *in the context of a motion for summary judgment*, that to obtain relief under the FDCPA a plaintiff must establish that the debt being collected was a consumer debt. The cited case, Hammerman v. GB Collects, WL 5816499 (D.Md. 2013) (*not reported*), adjudicated a motion for summary judgment, which adjudicates the merits of a controversy when there is no genuine issue of material facts and the law allows adjudication on the merits without the need for a trial.

In trial, Natal Olivo must prove, by preponderance of the evidence, that the debt was a consumer debt, as this is an element of the cause of action being

litigated herein. However, the relief requested by the Collection Agency in their *Motion to Dismiss* is subject to a different standard of review. Thus, the *Hammerman* contention is inapplicable since Natal Olivo must, at this stage, only allege enough well-pleaded facts that, if taken as true, will give her a right to relief under the FDCPA. Additionally, in any case, whether the debt is a consumer or a commercial debt is a fact under genuine dispute.

Thus, the Boss' contention that Natal Olivo must prove at this stage of the civil procedure that her debt was in fact a consumer debt is misleading and inapplicable to the relief sought by Boss in their Rule 12 Motion to Dismiss.

### IV. CONCLUSION

The FDCPA is a remedial legislation meant to protect consumers from unscrupulous debt collectors and should be liberally construed in favor of the consumer. Cirkot, 839 F.Supp. at 944. This Act is premised on the serious and widespread abuses set forth by these unscrupulous debt collectors and, as such required, "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive collection practices." Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir.1989).

Accordingly, based on the previous facts, applicable law and discussion presented, Natal-Olivo respectfully request that this Honorable Court deny Boss' Motion to Dismiss and allows her to seek relief under the FDCPA. The well-pleaded facts in the Second Amended Complaint are enough to prove a plausible claim upon which relief can be granted since Natal-Olivo's debt is a consumer debt, for the purposes of the FDCPA, she is not equitably estopped for seeking relief and neither Co-Defendant proffered enough evidence or proved the application of the bona fide error defense.

**WHEREFORE**, plaintiff, hereby respectfully requests that this Honorable Court DENIES the Collection Agency's Motion to Dismiss contained in Docket No. 48 and ORDERS the Collection Agency to file an Answer to the Second Amended Complaint.

**RESPECFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 23rd day of December, 2013.

**WE HEREBY CERTIFY** that in this date the foregoing motion has been presented to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification to all concerned parties of record.

**RIVERA & FERNANDEZ LAW OFFICE**
*Attorneys for Plaintiff*
P.O. Box 360764
San Juan, P.R. 00936-0764
Physical Address:
Suite 100 AREY Bldg.
#4 Mexico St., Hato Rey, PR
Ph. 787-282-0707 / Fax 787-281-0708

**/s/ Edgardo L. Rivera Rivera**
USDC-PR 206912
erivera@rflawpr.com

**/s/ Anibal J. Nunez Gonzalez**
USDC-PR 230101
nunez.anibal@gmail.com