UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

JEANELLIE NATAL-OLIVO,

    Plaintiff,

v.

THE BOSS COLLECTION SERVICE, INC., FNU SOSTRE, INSURANCE COMPANY XYZ,

    Defendant.

Civil No. 13-1232 (JAF)

**OPINION AND ORDER**

Plaintiff Jeanellie Natal-Olivo ("Natal") originally claimed that Defendants, The Boss Collection Service, Inc. ("Boss"), Abner García-Marcano ("García"), Jane Sostre or FNU Sostre ("Sostre"), and Komodidad Distributors, Inc. ("Komodidad"), had violated her rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. (Docket No. 2.) Since then, several defendants have been voluntarily dismissed. (Docket No. 47.)

This order resolves four pending motions to dismiss filed by various defendants (Docket Nos. 15, 26, 28, 48), Natal's request for an order (Docket No. 22), and Boss' motion for reconsideration (Docket No. 56). We find that the amended complaint (Docket No. 46) survives all motions to dismiss. Therefore, we also end our abeyance of Natal's motion for summary judgment (Docket No. 14), and deny the motion to reconsider (Docket No. 56).

**I.**

**Procedural History**

On March 21, 2013, Natal filed her complaint. (Docket No. 2.) On May 28, 2013, she filed a motion for summary judgment. (Docket No. 14.) On June 11, 2013, García filed a motion to dismiss for lack of subject-matter jurisdiction, claiming that Natal's debt was a business debt and, therefore, not covered by FDCPA. (Docket No. 15.) On June 12, 2013, Boss and García moved us to hold in abeyance their opposition to Natal's motion for summary judgment pending a ruling on the motion to dismiss. (Docket No. 16.) On June 25, 2013, Natal amended her complaint. (Docket No. 17.) On July 1, 2013, we granted Boss and García's motion to hold their opposition to summary judgment in abeyance pending a ruling on the motion to dismiss. (Docket No. 21.) On July 10, 2013, Natal filed a motion requesting an order and expressing her opposition to the motion to dismiss. (Docket No. 22.) On August 8, 2013, García and Boss filed a joint motion to dismiss. (Docket No. 28.) On September 23, 2013, Natal filed a memorandum in opposition to the motion to dismiss. (Docket No. 34.) On October 7, 2013, Komodidad filed a reply to the response to the motion to dismiss. (Docket No. 40.) On October 7, García and Boss also filed a joint reply to the response to the motion to dismiss. (Docket No. 41.)

On October 25, 2013, Natal filed another amended complaint against only Sostre, Boss, and XYZ. (Docket No. 46.) On the same day, she filed a notice of voluntary dismissal without prejudice against the other codefendants – Komodidad and García. (Docket No. 47.) In the court filings, the defendant previously described as "Jane Sostre"

was replaced with "FNU Sostre." On November 4, 2013, Boss filed another motion to dismiss. (Docket No. 48.) On December 23, 2013, Natal filed a memorandum in opposition to the motion to dismiss the second amended complaint. (Docket No. 21.) On January 8, 2014, we ordered Natal to provide the alleged recordings of the conversations she mentioned in her motion for summary judgment. (Docket No. 55.) On January 10, 2014, Boss moved us to reconsider and/or clarify that order. (Docket No. 56.)

## II.

## Facts

When considering a motion to dismiss, we must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 39-40 (1st Cir. 2010) (citation omitted). Therefore, to the extent that any facts are disputed, the facts set forth below represent Natal's version of the events at issue.

In December 2012, Natal visited a Gatsby's store in Bayamón, Puerto Rico, looking to purchase clothing for herself and her family. Gatsby operates as both a wholesale and a retail store specializing in clothing, accessories, and fragrances. Gatsby's employee told Natal that she could become a "Gatsby partner," which would allow her to purchase clothes at a discount and under a credit agreement. (Docket No. 46 at 3.) Natal told the employee that she was only buying items for herself and her family, and that she did not intend to resell any items. She asked if there was a minimum purchase required, and the employee said there was not. The employee also said that Natal would not be required to resell the merchandize. Natal then said that she only

wanted to buy clothes for herself and her family. (Docket No. 46 at 4.) Natal signed an agreement for the "Gatsby partner" program. She saw that one paragraph was titled "Commercial use," but the employee told her to ignore that paragraph. (Docket No. 46 at 5.) Natal paid a membership fee. Upon signing the agreement, Natal purchased a few items of clothing for herself and her family on credit. Over time, she continued to make small purchases of clothes, accessories, and fragrances for herself and her family. Natal only purchased single items of clothing, one fragrance, and two gift cards. She bought twenty items or less in total, worth $360. (Docket No. 46 at 6.)

Natal failed to pay back the credit. Gatsby placed two phone calls to Natal to collect the debt, and then referred the debt to Boss, Gatsby's debt collector. On March 14, 2013, Sostre contacted Natal's mother-in-law. She told the mother-in-law that she was an "Agent"; that Natal owed $504.20; that the debt was in default; that a lawsuit was filed against Natal to collect the money; and that Natal was required to contact Sostre within the next half hour, by 11:00 A.M. (Docket No. 46 at 7.) In response, Natal's husband called Sostre at approximately 11:00 A.M. Sostre told Natal's husband the same things, and additionally stated that if payment was not made, Natal's personal references and Natal herself would receive a citation for appearance before a court the following Monday; that a payment plan was not possible; that an attorney was already involved in the proceeding; that Natal would owe $800 by the next day; that she would have to pay an additional $2,000 to $2,500 on Monday if payment was not received; and that she was going to be "convicted" if payment was not made. (Docket No. 46 at 8-9.) Natal's husband offered $200 as partial payment to stop the judicial proceeding, and Sostre told

him to deposit the money in a checking account at Banco Popular. Sostre insisted that payment was required to stop the proceedings and stop the "citation" of Natal's personal references. Sostre at all times represented herself as "Agent Sostre." (Docket No. 46 at 9.) Sostre told Natal's husband that payment of $304.20 was required by March 15, 2013, at 11:00 A.M. (Docket No. 46 at 10.)

Natal called Sostre on March 14, 2013, at approximately 12:17 P.M. and identified herself as the debtor. Sostre identified herself as a "prosecutor" who was collecting a debt. Sostre said that a hearing would be held that Monday, March 18, 2013. She repeated the payment amounts and increases stated in the last conversation. (Docket No. 46 at 10-11.) Sostre cited a case number for the alleged court hearing. Sostre stated that a payment plan was not a possibility. Natal borrowed money from family members and made the complete payment on March 14, 2013, at approximately 1:20 P.M. (Docket No. 46 at 11.) Sostre and Boss said that the judicial proceeding was closed due to Natal's payment. (Docket No. 46 at 12.)

## III.

## **Analysis**

A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to establish a plausible claim for relief. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. Rodríguez-Ramos, 685 F.3d at 39-40 (citation omitted).

It should be noted that the only remaining defendants are Boss, FNU Sostre, and Insurance Company XYZ. Defendants García and Komodidad have been voluntarily dismissed. (Docket No. 47.) Therefore, Komodidad's motion to dismiss is now moot. (Docket No. 26.)

### A. Dismissal for Lack of Subject-Matter Jurisdiction

In their three motions to dismiss, Boss claims that the case must be dismissed for lack of subject-matter jurisdiction. (Docket Nos. 15, 28, 48.) They claim that Natal incurred a commercial debt rather than a personal debt, and that it is, therefore, not covered by the Federal Debt Collection Practices Act ("FDCPA"). "Debt" under the act is defined as,

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a. However, it is unclear that Natal incurred a commercial debt, rather than a personal debt.

In support of their argument, Boss points to the clause in the agreement Natal signed, entitled "commercial use," which states that "the merchandise purchase on credit under this Agreement is for commercial use (that is, resale) and not for personal, family, or home purposes." (Docket Nos. 48, 48-1) (sic).

There is no relevant case law in the First Circuit, so we look to other circuits for guidance in deciding whether a debt is commercial or personal in the face of conflicting

evidence. To survive this motion, the Ninth Circuit and the Fifth Circuit have held that "viewing the transaction as a whole," the plaintiff must raise a genuine issue of material fact as to whether the loan was primarily for consumer (personal) purposes. Slenk v. Transworld Systems, Inc., 236 F.3d 1072, 1075 (9th Cir. 2001); see also Riviere v. Banner Chevrolet, Inc., 184 F.3d 457, 462 (5th Cir. 1999). In these circuits, "[n]either the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry." Id. Instead, both courts stated that we should look to the "substance of the transaction and the borrower's purpose in obtaining the loan." Id. The Fifth Circuit stated that the borrower's purpose is a factual determination that "hinges on [the borrower's] credibility." Riviere, 184 F.3d at 462. In an analogous case, the Eastern District of Virginia stated that "Plaintiff may well have violated the terms of the [contract] by incurring personal debt with it, but that fact, even if true, cannot change the character of the debt and take it out of the FDCPA's jurisdiction." Perk v. Worden, 475 F.Supp.2d 565, 570 (E.D.V.A. 2007).

We follow what appears to be a growing consensus. Because the text of the contract is not dispositive, the borrower's intent is a factual dispute between the two parties. Because this is a credibility determination, we refrain from dismissal on this ground.

**B.    Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted**

Boss argues that the FDCPA entitles them to rely on the information provided by the original creditor and that they have no independent duty to investigate or verify a debt referred for collection. (Docket No. 48.) Boss argues that they followed internal controls

adapted to avoid errors, and that an officer personally reviewed and relied in good faith on the information provided by Gatsby. (Docket No. 48.) The FDCPA states that,

> a debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

There is no relevant case law in the First Circuit, so we look to other circuits for guidance in deciding whether the bona fide error defense applies. The Seventh, Ninth, and Tenth Circuits emphasized that a valid bona fide error defense is an objective test, and must involve the maintenance of procedures that are "'reasonably adapted' to avoid the specific error at issue." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011) (citations omitted); see also Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006); Kort v. Diversified Collection Services, 394 F.3d 530, 539 (7th Cir. 2005) (stating that the procedures must constitute a "reasonable precaution" to avoid the error at issue). The Ninth Circuit also wrote that "[u]nwarranted reliance on a client is not a procedure to avoid error." McCollough, 637 F.3d at 948 (citations omitted).

From the limited information provided, we cannot say that the procedures maintained by Boss were objectively reasonable to prevent this specific error -- the collection of personal debts that are improperly memorialized as business debts in the original agreement. Therefore, we refrain from dismissal on this ground.

C.   **Motion for Reconsideration**

Boss moved us to reconsider and/or clarify our order regarding discovery of the audio recording, arguing that summary judgment motions were held in abeyance. (Docket No. 56.) Because we are denying Boss' motions to dismiss, we also end our abeyance of Natal's motion for summary judgment. Therefore, we deny this motion for reconsideration.

## IV.

## Conclusion

For the foregoing reasons, we hereby **DENY** Boss' motions to dismiss (Docket Nos. 15, 28, 48). We **DENY** as moot Komodidad's motion to dismiss (Docket No. 26), Natal's motion requesting an order (Docket No. 22), and Boss' motion to reconsider and/or clarify our most recent order (Docket No. 56). We no longer hold Natal's motion for summary judgment in abeyance (Docket No. 14). Remaining defendants have until **January 27, 2014**, to file a Response to the motion for summary judgment (Docket No. 14).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 14th day of January, 2014.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE